In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-514 CV


____________________



IN THE INTEREST OF M.D.L.E., a child







On Appeal from the County Court at Law No. 3


Montgomery County, Texas


Trial Cause No. 04-11-09249-CV






MEMORANDUM OPINION


 Aishia Eason appeals the termination of her parental rights to her minor child
M.D.L.E. In her first, second, third, and fifth issues for review, Eason asserts certain
violations of her due process rights under the United States Constitution. Her fourth issue
complains of the trial court's abuse of discretion in allowing the Texas Department of Family
and Protective Services ("the Department") to amend its petition at the start of trial. Last,
Eason contends the evidence is legally insufficient to support the trial court's termination
order. We affirm.

 Eason, from age eight, had been, for the most part, in the care and custody of the
Department since 1995. The record reflects that during that time Eason ran away at various
times and became involved in the use of illegal drugs. At age sixteen or seventeen, after
having been placed in the custody of her grandmother, Eason became pregnant and again
returned to the Department's care and custody. 

 On November 5, 2004, Eason gave birth to M.D.L.E. The Department took
possession of the child the day the child was born and subsequently filed an "Original
Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting
the Parent-Child Relationship." In its petition, the Department alleged that Eason committed
one or more of the following acts or omissions, viz:

 1. knowingly placed or knowingly allowed the child to remain in conditions
or surroundings which endanger the physical or emotional well-being of the
child;

 

 2. engaged in conduct or knowingly placed the child with persons who engaged in
conduct which endangers the physical or emotional well-being of the child.[ (1)] 


The trial court entered an order of protection appointing the Department the child's
temporary sole managing conservator. 

 A month after giving birth, the Department placed Eason and the child in Sandra and
Ron Carpenter's home for foster care. When Eason turned eighteen years old, she moved
into a home located across the Carpenters' driveway. After Eason lived there for only three
weeks, the Department determined she failed to comply with the goals of the living
arrangement and removed her from the property. Subsequently, Eason moved to Houston
with an aunt. Eason maintained very limited contact with the child. Based upon the
following additional grounds alleged in its amended petition, the Department sought to
terminate Eason's parental rights:

 1. executed an unrevoked or irrevocable affidavit of relinquishment of parental
rights as provided by Chapter 161, Texas Family Code;


 2. constructively abandoned the child who has been in the permanent or
temporary managing conservatorship of the Department of Family and
Protective Services or an authorized agency for not less than six months and:
(1) the Department or authorized agency has made reasonable efforts to return
the child to the mother; (2) the mother has not regularly visited or maintained
significant contact with the child; and (3) the mother has demonstrated an
inability to provide the child with a safe environment;


 3. failed to comply with the provisions of a court order that specifically
established the actions necessary for the mother to obtain the return of the
child who has been in the permanent or temporary managing conservatorship
of the Department of Family and Protective Services for not less than nine
months as a result of the child's removal from the parent under Chapter 262
for the abuse or neglect of the child.[ (2)] 


After a bench trial on the merits, the trial court terminated the parent-child relationship
between Eason and her child. (3) Within fifteen days of the termination order, Eason filed her
"Motion for New Trial and Points on Appeal." See Tex. Fam. Code Ann. § 263.405(b)
(Vernon Supp. 2006). The trial court held a hearing on her motion for new trial and declined
to grant her motion. 

 In her first, second, and third issues on appeal, Eason argues her due process rights
were violated by the failure of the Department and the trial court to comply with the
requirements of the Texas Family Code. Eason presented her complaints in issues one and
two in her statement of points combined with her motion for new trial; her challenge in
issue three is raised for the first time on appeal. A parent's rights to the care, custody,
companionship, and management of his or her children are constitutional interests "far more
precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct.
1388, 71 L.Ed.2d 599 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003). "While parental
rights are of constitutional magnitude, they are not absolute. Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent-child relationship, it is also
essential that emotional and physical interests of the child not be sacrificed merely to
preserve that right." In re C.H., 89 S.W.3d 17, 26 (Tex. 2002). 

 The record shows the Department took possession of M.D.L.E. at birth without a court
order pursuant to a Notice of Emergency Removal of Children. On the first business day
following the date of the child's removal, the Department filed its "Petition for Protection
of a Child, for Conservatorship, and For Termination [of] the Parent Child Relationship." 
The Department obtained an ex parte order from the trial court appointing the Department
as the child's temporary sole managing conservator. A full adversary hearing was scheduled
fourteen days later. After the adversary hearing, the trial court entered further temporary
orders, inter alia, naming Eason as temporary possessory conservator of the child. The case
was tried on October 24, 2005, just less than one year after the child was taken into custody
by the Department, and Eason's parental rights were terminated. 

 In issue one, Eason maintains that section 262.104's requirements for emergency
removal of a child without a court order were violated. See Tex. Fam. Code Ann. § 262.104
(Vernon Supp. 2006). She maintains there was no evidence presented at the November 8,
2004, hearing, which followed the child's removal, of an immediate danger to the child, 
sexual abuse of the child, or current drug abuse by the person in possession of the child. See
id. In issue two, Eason contends the trial court did not apply the proper standard at the
November 8 hearing. Once the Department removes the child without a court order, the trial
court must hold an initial hearing under section 262.107 and must order the return of the
child unless the court finds the following: there is a continuing danger to the child;
continuation of the child in the home would be contrary to the child's welfare; and reasonable
efforts were made to prevent or eliminate the need for the child's removal. Tex. Fam. Code
Ann. § 262.107 (Vernon 2002). There is no transcript of the November 8 ex parte hearing,
but the order recites that the trial court considered the pleadings and evidence before it,
including the caseworker's affidavit. The affidavit states Eason was in the Department's
care, and the child was also brought into the Department's custody to protect both the mother
and the child. The order then recites reasons for the child's removal that comport with the
factors set out in section 262.104. We do not know what additional evidence, if any, the trial
court considered. We take as true the recitals in the order. See generally In re D.J.M., 114
S.W.3d 637, 639 (Tex. App.--Fort Worth 2003, pet. denied) ("Absent evidence to the
contrary, we view recitations contained in the trial court's judgment and records as true."). 
Issues one and two are overruled.

 In issue three Eason contends there was no evidence presented at the November 22,
2004, full adversarial hearing to justify the Department's continued custody of M.D.L.E. (4) 
See Tex. Fam. Code Ann. § 262.201 (Vernon Supp. 2006). In involuntary termination
cases, a party intending to appeal the trial court's termination order must timely file "a
statement of the point or points on which the party intends to appeal." See Tex. Fam. Code
Ann. § 263.405(b)(Vernon Supp. 2006). Appellate courts may not consider an issue not
specifically presented to the trial court in the statement of points or in a statement combined
with a motion for new trial. See id. § 263.405(i). Eason did not present this argument to the
trial court either at the hearing below or in her statement of points combined with her motion
for new trial. On appeal, she argues for the first time that the alleged error at the full
adversarial hearing is fundamental error. 

 In In re B.L.D., 113 S.W.3d 340, 351 (Tex. 2003), the Texas Supreme Court refused
to extend the fundamental-error doctrine to parental rights termination cases and held that
termination cases are unlike juvenile delinquency cases and do not apply criminal procedural
or evidentiary rules. Recently, the Texas Supreme Court reiterated that the rules governing
error preservation must be followed in cases involving termination of parental rights, as in
other cases in which a complaint is based on constitutional error. See In re K.A.F., 160
S.W.3d 923, 928 (Tex.), cert. denied, __ U.S. __, 126 S.Ct. 483, 163 L.Ed.2d 364 (2005). 
Because Eason did not "specifically present" her "no evidence" claim to the trial court in her
statement of points combined with her motion for new trial, we may not consider it. See Tex.
Fam. Code Ann. § 263.405(i).

 In her fourth issue, Eason argues the trial court abused its discretion in allowing the
Department to amend its petition at the start of trial. Eason argues the trial court should have
granted her a continuance. A trial court's decision to grant leave to file an amendment is
reviewed for an abuse of discretion. See Greenhalgh v. Serv. Lloyds Ins. Co., 787 S.W.2d
938, 939-41 (Tex. 1990). Rule 63 of the Texas Rules of Civil Procedure provides the
following: 

 Parties may amend their pleadings . . . by filing such pleas with the clerk at
such time as not to operate as a surprise to the opposite party; provided, that
any pleadings . . . offered for filing within seven days of the date of trial or
thereafter . . . shall be filed only after leave of the judge is obtained, which
leave shall be granted by the judge unless there is a showing that such filing
will operate as a surprise to the opposite party. 


Tex. R. Civ. P. 63. A trial court has no discretion to refuse an amendment unless the party
opposing the amendment presents evidence of surprise or prejudice. Greenhalgh, 787
S.W.2d at 939. "A mere allegation of surprise is not a sufficient showing." La. & Ark. Ry.
Co. v. Blakely, 773 S.W.2d 595, 597 (Tex. App.--Texarkana 1989, writ denied).

 At the start of trial, the Department moved for permission to file an amended petition
that included three additional grounds for termination. Eason objected on the grounds of
surprise and stated, "I think there is surprise in the sense that there was [sic] only two
grounds before and now there are three additional ones. . . . I think there may have been
additional preparation that I would have done, having known the other additional grounds." 
Eason provided no other evidence to support her assertion of surprise or that she would be
prejudiced. The trial court granted the amendment. We hold that because Eason did not
present sufficient evidence to show surprise or prejudice, the trial court did not abuse its
discretion in granting the Department's request to amend its petition. See Greenhalgh, 787
S.W.2d at 939. Issue four is overruled. 

 Eason urges in her fifth issue that the failure of the trial court's previous orders to
"specifically establish the actions necessary for [her] to obtain the return of her child as
required by section 161.001(1)(O) of the Texas Family Code[,]" violated her due process
rights. Specifically, Eason contends it is a due process violation to require her to follow a
service plan that was never filed pursuant to section 263.101 of the Texas Family Code. See
Tex. Fam. Code Ann. § 263.101 (Vernon 2002). She states in her brief, "It is completely
unrealistic for [me] to be expected to follow a court order that does not exist as it relates to
the steps necessary for [me] to obtain the return of [my] child." 

 Although we do not find a service plan in the record as required by section 263.101,
there is evidence of its existence. Following the adversary hearing, the trial court entered a
temporary order acknowledging that the Department had prepared a service plan for Eason
and ordering Eason to comply with the requirements set out in the service plan. The court
also entered a status hearing order noting the goals of the service plan and Eason's review
of the plan. The trial court entered permanency hearing orders and found that Eason had not
complied with the service plan. Eason never contested the existence of a service plan during
any of the trial court's proceedings. In fact, several witnesses at trial, including Eason,
acknowledged the existence of the service plan, the general goals asserted in the service plan,
and testified regarding certain specific responsibilities Eason was required to accomplish
under the plan. The purpose of section 263.101 -- to put a parent on notice of the steps
necessary to obtain the return of their child -- was satisfied because Eason knew of the
service plan and what was required for her to comply with the plan. Eason's fifth issue is
overruled.

 In issue six, Eason challenges the legal sufficiency of the evidence to support the trial
court's grounds for terminating her parental rights. The Texas Supreme Court has explained
that "termination proceedings should be strictly scrutinized, and involuntary termination
statutes are strictly construed in favor of the parent." Holick v. Smith, 685 S.W.2d 18, 20
(Tex. 1985). Before a court may involuntarily terminate a parent's rights, the evidence in
support of termination must be clear and convincing. Id. "'Clear and convincing evidence'
means the measure or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be established." Tex. Fam.
Code Ann. § 101.007 (Vernon 2002). 

 When an appellant attacks the legal sufficiency of an adverse judgment on an issue
on which she did not have the burden of proof, that appellant must demonstrate there is no
evidence to support the adverse finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.
1983). In cases involving the termination of parental rights, the standard of review for legal
sufficiency is whether the evidence is such that a reasonable fact finder could have formed 
a firm belief or conviction about the truth of the matter on which the Department bears the
burden of proof. See In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). We consider all the
evidence in the light most favorable to the verdict, assume that the fact finder resolved
disputed facts in favor of its finding if a reasonable fact finder could have done so, and
disregard all evidence that a reasonable fact finder could have disbelieved or found to be
incredible. Id.

 In proceedings to terminate the parent-child relationship, the Department must
establish by clear and convincing evidence that (1) the parent has committed one or more of
the statutory acts or omissions prohibited in section 161.001(1) of the Family Code, and (2)
termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2)
(Vernon Supp. 2006); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005). However, because Eason
does not challenge the trial court's ruling that termination is in the child's best interest,
"[o]nly one predicate finding under section 161.001(1) is necessary to support the judgment." 
In re A.V., 113 S.W.3d 355, 362 (Tex. 2003). 

 Eason argues the evidence is legally insufficient to support the trial court's findings
under section 161.001(1) (D), (E), (N), and (O). One of the findings is constructive
abandonment. To find that Eason constructively abandoned her child, the Department must
prove by clear and convincing evidence that (1) the child has been in the permanent or
temporary managing conservatorship of the Department or an authorized agency for at least
six months; (2) the Department has made reasonable efforts to return the child to Eason; (3)
Eason has not regularly visited or maintained significant contact with the child; and (4)
Eason has demonstrated an inability to provide the child with a safe environment. See Tex.
Fam. Code Ann. § 161.001(N).

 In this case, the Department became the child's temporary sole managing conservator
on November 8, 2004, and the trial commenced on October 24, 2005. Thus, the child has
been in the temporary managing conservatorship of the Department for at least six months.

 We next consider the Department's efforts to return the child to Eason. The
Carpenters, a representative of Child Protective Services, and CASA spoke with Eason and
explained that it was important for her to learn how to take care of her child. The
Department and the Carpenters had an arrangement facilitated by Eason's service plan
whereby the Carpenters would mentor Eason and instruct her on proper parenting techniques. 
The purpose of the placement was for Eason to keep her child and live in a home with foster
parents who had experience with young mothers and their children. The Carpenters were
going to provide Eason with parental "on-the-job-training" in their home. 

 When Eason turned eighteen years old, she moved into another house on the
Carpenters' property to learn how to live independently. Eason was required to take care of
her child during the times she was not in school or at work and then was required to return
him to the Carpenters in the evening. The Carpenters worked with Eason to try to help her
establish a relationship with her son. They assisted Eason in maintaining her psychological
and physical health and in attending counseling. They made efforts to allow Eason to
participate in the child's health care and his daily activities. The Carpenters also helped
Eason find employment, provided her with transportation, and provided her with money to
buy groceries. 

 After the Department removed Eason from the Carpenters' property for failing to
comply with the arrangement as provided in the service plan, the Department continued its
efforts to improve her ability to parent and support the child. The Department communicated
with Eason to create an ongoing plan, encouraged her to take parenting classes, and
encouraged her to maintain her mental health. The Department also provided Eason with
standard visitation on Friday mornings in its Conroe office. Although Eason had moved to
Houston and had difficulty finding transportation from Houston to the Department's Conroe
office, she did not ask the Department if she could visit the child in the Department's
Houston office. The Department, however, attempted to help Eason resolve her
transportation issues by asking Eason to provide it with a bus schedule so they could all find
a convenient location for Eason and the child to visit. Eason did not follow up on the
Department's request and failed to contact the Department to resolve this issue. In light of
this evidence, we hold there is sufficient evidence to establish the Department's reasonable
efforts to return the child to Eason. 

 Next, we consider the evidence of Eason's contacts with the child. Soon after moving
into the Carpenters' home, Eason became disinterested in caring for her child and spent little
time with him. Instead of caring for the child during her time off from work, Eason would
sleep until she had to go to work and would not return home until after the child was in bed
for the evening. Eason testified that, like a normal teenager, she slept in until 10:00 or 11:00
a.m. because she "felt there was no reason to get up that early in the morning." 

 Mrs. Carpenter had concerns about the bond between Eason and the child because
Eason did not have the ability to "read [M.D.L.E.'s] cues" and had difficulty feeding the
child and handling the child when he cried. Mrs. Carpenter also revealed that Eason would
not wake up when the child did and Eason was not comfortable bathing the child. Mr.
Carpenter testified that Eason was lethargic and did not take advantage of the opportunities
she had to care for her child. 

 Teresa Burbank, Eason's licensed professional counselor, testified Eason exhibited
apathetic behavior toward the child and "rarely engaged in his care." Gilda Steward, the
child's caseworker, testified that when she spoke with Eason about the fact that Eason rarely
visited her son while they both lived on the Carpenters' property, Eason responded by saying
she did not visit because she was tired, she did not have enough time to visit him, and she had
too many things to do. Steward indicated that Eason did not establish a solid relationship
with the child; that, on a regular day, Eason would visit the child thirty minutes before she
went to school, come home from school without seeing the child, attend work, and return
home after the child was in bed. Bess Evans, the child's CASA worker and guardian ad
litem, described Eason's interaction with the child while Eason lived with the Carpenters. 
Evans noted that when Eason was with the child, she would hold him for a few minutes and
then give him back to the Carpenters. 

 After Eason left the house located on the Carpenters' property, the child remained
with the Carpenters for approximately six months. Eason visited the child only twice during
this six month period. Eason was given standard visitation with the child to take place in the
Department's office, but she did not attend the visitations and did not call the office to cancel
the visits or to check on the child. Eason testified that she had seen the child three times
between February 2005 and the October 2005 trial date. 

 Evans testified she observed one of Eason's three visits with the child and there was
no bond between Eason and her child; the child did not seem to know who Eason was. In
describing the physical contact between Eason and the child, Evans noted that "[i]t was like
she was holding him like a sack of groceries. . . ." Evans explained her observation of the
visit as follows:

 [H]e is a very, very playful happy child. And she just sat and looked at him. 
Every once in awhile she would say something to him. . . . [S]he'd say . . . he's
wet, and she picked him up and she'd see the diaper was wet, and . . . she sat
there . . . another ten minutes before she decided to go through the bag . . . and
tried to change his diaper. And then the rest of the time she sat there with his
binkie in her mouth . . . for quite awhile. You know, it was really amazing. 


We have reviewed the evidence and hold there is sufficient evidence to satisfy the third prong
of the test that Eason had not regularly visited or maintained significant contact with
M.D.L.E. See Tex. Fam. Code Ann. § 161.001(N).

 The evidence also shows Eason's inability to provide a safe environment for
M.D.L.E., as required by the fourth prong. See id. Eason suffers from medical and mental
health illnesses and has failed to properly maintain her own health. Eason has been
diagnosed with "ADHD, schizo-affective disorder, and bipolar disorder." She also suffers
from depression, mood swings, anger, and aggression, and has told a doctor that she hears
voices. Eason was often ill, has been hospitalized for suffering a seizure caused by stress and
low blood sugar, and has "passed out" from having low blood sugar while she was holding
the child in a chair. She has also been hospitalized after suffering an asthma attack. She has
been prescribed sleeping pills, diabetic and seizure medication, and psychotropic
medications. Steward testified that when she visited Eason while in the Carpenters' care, she
discovered that Eason was not taking her medication regularly. 

 Burbank expressed her concerns about Eason's ability to be an appropriate parent and
testified that Eason would need to seek help from a psychiatrist for regular consultations,
medication management, and intensive therapy. Eason would also need to increase her
parenting skills and seek interventions for substance abuse. Burbank indicated that Eason
may resist the help offered by the Department because "there is a strong link between
resistance to taking medication, resistence to therapy and a severe mood disorder such as
bipolar and schizo-affective. . . ." In explaining how Eason's mental health could effect her
ability to provide the child with a safe environment, Burbank testified as follows:

 If [Eason]'s condition is not stabilized, it would prove to be a very
volatile environment. She potentially, during periods of depression, may sleep
for long periods of time. She wouldn't be able to function and just performing
day-to-day activities to take care of herself would be incredibly difficult.


 During periods of mania, a lot of times individuals make very poor
choices. They may engage in drug use, they may engage in . . . being awake
for long periods of time, which once again would be very difficult to take care
of an infant child during that point in time.


 [I]f she is experiencing psychotic symptoms related to schizo-affective,
she may be paranoid, she may be delusional, which could definitely put the
child's safety at risk. 


 Eason had a history of prior drug use. Burbank testified that prior to Eason's
becoming pregnant, Eason abused alcohol, smoked cigarettes, used "acid fry, which is
embalming fluid, Xanax, [and] cocaine." Eason has participated in drug counseling
programs and did not abuse drugs while pregnant. However, Steward suspected that Eason
may have abused drugs at some time after she moved to Houston. 

 Eason has failed to maintain steady housing. Shortly after leaving the house on the
Carpenters' property, Eason moved to Houston to live with her aunt. The apartment was
apparently located in a known drug area and Eason's aunt used drugs. Evans visited the
apartment and determined it was uninhabitable and "filthy," and was not an appropriate place
for a child to live. When Evans entered the apartment, she observed Eason sleeping on a bare
mattress on the floor. Evans explained that there was no furniture in the apartment and she
observed only one bed in a spare bedroom. In Eason's room, there was no furniture and
clothes were scattered on the floor. There were flies in the bathroom because the commode
had not been flushed. The kitchen had "stuff. . . strewn all over." Eason lived in this
apartment for approximately two to three months before moving into a women's shelter for
approximately one month. The record indicates Eason may even have been homeless during
a time between her stay with her aunt and her stay at the shelter. At trial, Eason indicated she
had been living in another apartment for approximately two months. 

 Eason has failed to maintain steady employment. Steward indicated that the
Department asked Eason to provide it with pay stubs, but by the time the Department had
conducted an investigation to confirm Eason's employment, she had already left that
particular job. Eason explained that she did not have a job in which she receives a paycheck. 
Eason testified that she worked for a telemarketing company in July 2005, but was on leave
as a result of an injury. She noted that although she had not worked prior to the
telemarketing company, she supports herself financially by working at "commission jobs,"
babysitting her cousins, cleaning her grandmother's house, and receiving SSI benefits.
Eason's financial support at the time of trial consisted of $579 per month in SSI benefits and
$300 in babysitting payments. There is sufficient evidence to find that Eason has
demonstrated an inability to provide the child with a safe environment. 

 We have carefully reviewed and considered the evidence and hold that the trial court
could have reasonably formed a firm belief or conviction that Eason constructively
abandoned M.D.L.E. pursuant to Tex. Fam. Code Ann. § 161.001(1)(N). Because the
evidence is sufficient to support the trial court's judgment terminating Eason's parental
rights, we need not address the evidence supporting the court's other findings. Issue six is
overruled. The judgment is affirmed.

 AFFIRMED.


 __________________________________

 CHARLES KREGER

 Justice


Submitted on July 27, 2006

Opinion Delivered March 8, 2007



Before Gaultney, Kreger and Horton, JJ.

CONCURRING OPINION


 The trial court permitted a substantive pleading amendment, asserting constructive
abandonment, on the day of trial and denied a continuance. This was error. See Chapin &
Chapin, Inc. v. Tex. Sand & Gravel Co., 844 S.W.2d 664, 665 (Tex. 1992) (distinguishing
substantive and procedural amendments); Greenhalgh v. Serv. Lloyds Ins. Co., 787 S.W.2d
938, 939 (Tex. 1990) (amendment asserting new cause of action prejudicial); Hardin v.
Hardin, 597 S.W.2d 347, 349-50 (Tex. 1980) (amendment asserting new cause prejudicial). 
 Nevertheless, sufficient evidence supports termination for endangering conduct. See
Tex. Fam. Code Ann. § 161.001(1)(E) (Vernon Supp. 2006). That ground was timely pled. 
The judgment is proper, therefore, and the error does not require reversal. See Tex. R. App.
P. 44.1 (reversible error standard). Although I respectfully disagree with the majority on
issue four, I concur with the Court's judgment. 


 ____________________________

 DAVID GAULTNEY

 Justice

Concurrence Delivered

March 8, 2007
1. These violations track section 161.001(1)(D) and (E) of the Family Code. See
Tex. Fam. Code Ann. § 161.001(1)(D), (E) (Vernon Supp. 2006). 
2. These additional grounds essentially track section 161.001(1)(K), (N), and (O) of
the Family Code. See Tex. Fam. Code Ann. § 161.001(1)(K), (N), (O) (Vernon Supp.
2006). 
3. The trial court found all of the pleaded grounds for termination except the
execution of the affidavit of relinquishment.
4. While Eason's third issue mentions that she was a minor without an attorney, the
thrust of the issue is that the Department presented no evidence justifying the
Department's continuing custody of M.D.L.E. Eason supplies no authority for a
fundamental error claim. See Tex. R. App. P. 38.1(h).